NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 12a0535n.06

**No. 09-4531**

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED

*May 23, 2012*

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| CHARLES BUTLER, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF OHIO |
| WARDEN, LEBANON | ) | |
| CORRECTIONAL INSTITUTION, | ) | |
| | ) | |
| Respondent-Appellee. | ) | |
| | ) | |
| | ) | |

Before: GIBBONS, GRIFFIN and DONALD, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.** Petitioner-appellant Charles Butler, an Ohio inmate convicted of manslaughter and possessing a weapon under a disability, appeals the district court's denial of his petition for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254. For the reasons below, we affirm the district court's decision to deny Butler's *habeas* petition.

**I.**

In March 2005, an Ohio grand jury returned a three-count indictment against Charles Butler. The indictment charged Butler with murder with an associated firearm specification, in violation of Ohio Revised Code § 2903.02(A); carrying a weapon under a disability, in violation of Ohio Revised Code § 2923.13(A)(3); and carrying a concealed weapon, in violation of Ohio Revised Code §

-1-

2923.12(A). Butler pled guilty to two counts: (1) a reduced charge of voluntary manslaughter with a firearm specification and (2) having a weapon under a disability. The concealed weapon charge was dismissed. The plea agreement stated that the sentence range was three to ten years' imprisonment for the manslaughter charge, a mandatory three years' imprisonment for the associated firearm specification, and one to five years' imprisonment for the concealed weapon charge—a maximum of eighteen years of imprisonment. The plea agreement set forth an agreed sentence of seventeen years of imprisonment. This agreed-upon sentence represented ten years for the voluntary manslaughter count, three years for the firearm specification, and four years for having a weapon under a disability. The plea agreement stated the following: "I understand my right to appeal a maximum sentence, my other limited appellate rights, and that any appeal must be filed within 30 days of my sentence."

On August 1, 2005, the state trial court conducted a plea colloquy. At that hearing, Butler indicated that he had read and understood the form in which he entered a plea of guilty to an agreed-upon sentence. The trial judge confirmed that Butler had voluntarily signed the plea agreement containing the agreed-upon sentence, and wished to plead guilty to voluntary manslaughter with a firearm specification and having a weapon under a disability. The trial judge also stated that "the maximum penalty you face here today under the plea agreement you agreed to with the State is 18 years in the state penitentiary . . . ." The trial judge continued that "I'm not obligated to give you the agreed sentence. I don't have to give you that. I can give you anything in this case from the three

years for the gun specification all the way up to 18 years." The trial judge then found Butler guilty

of voluntary manslaughter with a firearm specification and having a weapon under disability.

On August 15, 2005, the trial judge conducted a sentencing hearing and imposed the agreed-

upon sentence of seventeen years' imprisonment. This sentence represented, as in the plea

agreement, ten years for manslaughter and three years for the firearm specification, plus four years

for having a weapon under a disability. The judge subsequently stated that "I have given you in

Count I [the manslaughter count] the maximum sentence, because I find that you possess the greatest

likelihood of future crime." Finally, the trial judge stated that "You do have certain rights to appeal,

Mr. Butler. You can appeal anything in this case that you want to. If you can't afford an attorney,

one will be provided for you at no cost."

Butler appealed. He argued that the imposition of a maximum sentence was contrary to

*Blakely v. Washington*, 542 U.S. 296 (2004), because it required judicial fact-finding beyond those

facts he specifically admitted. Butler also argued that, because his rights under *Blakley* were never

explained to him, he did not enter into the plea knowingly or voluntarily. The Ohio Court of Appeals

affirmed the trial court along the following lines:

> Even after the release of *State v. Foster*, [845 N.E.2d 470 (Ohio 2006)], a sentence
> like Butler's "that is authorized by law, recommended jointly by defense and
> prosecution, and imposed by the sentencing judge is not subject to review." *State v.
> Mathis*, [846 N.E.2d 1 (Ohio 2006)], at ¶ 24[.] Although R.C. 2953.08(D) forecloses
> review of an agreed sentence, appellate review of the trial court's compliance with
> the dictates of Crim.R. 11(C) is still proper. The record reflects that the trial court,
> pursuant to Crim.R. 11(C), ensured that Butler's plea was made knowingly and
> voluntarily. We, therefore, . . . affirm the judgment of the trial court.

Butler then sought leave to appeal to the Ohio Supreme Court but was denied.

Butler subsequently filed a *habeas* petition in federal court. He argued, *inter alia*, that his sentence violated *Blakely*, that he was ineffectively advised by counsel about *Blakely*, and that the Ohio Court of Appeals's refusal to consider his claim pursuant to Ohio Revised Code § 2953.08(D) violated his due process and equal protection rights. A United States Magistrate Judge issued a Report and Recommendation ("R&R"), which recommended denying all of Butler's asserted grounds of relief. Butler filed objections to the R&R. The district court subsequently adopted the R&R in its entirety and denied Butler's *habeas* petition. *Butler v. Warden, Lebanon Corr. Inst.*, No. 1:08cv1, 2009 WL 4250028 (S.D. Ohio Nov. 23, 2009).

Butler then appealed. We granted a certificate of appealability with respect to two issues: (1) whether Butler's non-minimum sentences were imposed in violation of the Sixth Amendment and *Blakely*; and (2) whether the Ohio Court of Appeals violated Butler's due process and equal protection rights by refusing to review the allegedly illegal sentences pursuant to Ohio Revised Code § 2953.08(D).

**II.**

Because the Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this case, we review *de novo* the district court's conclusions on issues of law and on mixed questions of law and fact. *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (*en banc*). We also review the district court's factual findings *de novo*, as the district court did not conduct an evidentiary hearing and relied solely upon the state court record. *See Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007).

Under AEDPA, we review "the last reasoned state-court decision on the issue to determine whether that decision 'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or 'was based on an unreasonable determination of the facts.'" *Ruhlman v. Brunsman*, 664 F.3d 615, 619 (6th Cir. 2011) (quoting 28 U.S.C. § 2254(d)). "A state court's determination is contrary to clearly established federal law if 'the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts.'" *Id.* (quoting *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000)). "A state-court decision is an unreasonable application of clearly established federal law 'if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413). Importantly, "an *unreasonable* application of federal law is different from an *incorrect* application of federal law," *Williams*, 529 U.S. at 410, such that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). This "highly deferential standard" requires that determinations made in state court "be given the benefit of the doubt." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (internal quotations marks omitted).

**III.**

The heart of Butler's claim is that the trial judge impermissibly engaged in judicial fact-finding during sentencing. A brief summary of relevant United States Supreme Court and Ohio Supreme Court precedent is necessary to understand this argument.

In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Four years later, in *Blakely*, the Supreme Court clarified its holding in *Apprendi* when considering a judge's decision to sentence the defendant to 90 months in prison—three years above the 53-month statutory maximum—on grounds that the defendant had acted with "deliberate cruelty." 542 U.S. at 303–04. The Court held that because the judge could not have imposed a 90-month sentence solely on the basis of facts admitted by the guilty plea or found by the jury, the sentence ran afoul of the Sixth Amendment. *Id.* at 304–05. The Court held:

> the statutory maximum . . . is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant.* In other words, the relevant statutory maximum is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional findings. When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment, and the judge exceeds his proper authority.

*Id.* at 303–04 (citations and internal quotation marks omitted). Subsequently, the Court extended *Blakely*'s rationale to the Sentencing Guidelines. *United States v. Booker*, 543 U.S. 220, 233–34, 244 (2005).

Butler was sentenced in August 2005, a year after *Blakely* was decided. While his appeal was pending before the Ohio Court of Appeals, the Ohio Supreme Court decided *State v. Foster*, 845 N.E.2d 470 (Ohio 2006), which found a number of provisions of Ohio's sentencing statutes unconstitutional in light of *Blakely*. Most relevant to this appeal is Ohio Revised Code § 2929.14(C), which stated that "*the court* imposing a sentence upon an offender for a felony *may impose the longest prison term* authorized for the offense . . . *only* upon offenders who committed the worst forms of the offense, [or] upon offenders who pose the greatest likelihood of committing future crimes . . . ." *Id.* at 490. Because this provision required the judge to make specific findings of fact not admitted by the defendant or found by the jury before imposing the maximum sentence, it was not compliant with *Blakely*. *Id.* To remedy this provision and others deemed unconstitutional, *Foster* severed them. *Id.* at 497–98. The result after *Foster* was straightforward: in Ohio, "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *Id.* at 498. In other words, post-*Foster*, trial judges had the discretion to render any sentence within the statutory range—without making any findings of fact at all.

**A.**

Butler's first claim is that the ten-year maximum sentence imposed for his voluntary manslaughter conviction violated *Blakely* as interpreted in *Foster*. The Ohio Court of Appeals held that there was no *Blakely/Foster* violation because the court had imposed a jointly recommended

sentence that was authorized by law—and thus his sentence was insulated from appellate review under Ohio law. *See* Ohio Rev. Code § 2953.08(D).

At the time Butler was sentenced, the sentencing provision governing his manslaughter conviction stated that "[f]or a felony of the first degree, the prison term shall be three, four, five, six, seven, eight, nine, or ten years." Ohio Rev. Code § 2929.14(A)(1) (2005). However, the same statute also provided that "the court . . . may impose the longest prison term authorized for [a first degree felony] only upon offenders who committed the worst forms of the offense, [and] upon offenders who pose the greatest likelihood of committing future crimes . . . ." Ohio Rev. Code § 2929.14(C) (2005). In other words, to impose the maximum ten-year sentence, the judge had to engage in judicial fact-finding. Butler argues that this is exactly what the trial judge did when he told Butler during the sentencing hearing that "I have given you in Count I [the manslaughter count] the maximum sentence, because I find that you possess the greatest likelihood of future crime." Without improper judicial fact-finding, Butler argues, he was only subject to nine years in prison.

Had Butler not entered into a plea agreement setting forth an agreed-upon sentence, his sentence would have violated *Blakely* as interpreted in *Foster* and his case would have been remanded. But this agreement is significant because of two interrelated and important consequences of entering into such agreements in Ohio. First, under Ohio law, "[o]nce a defendant stipulates that a particular sentence is justified, the sentencing judge no longer needs to independently justify the sentence." *State v. Porterfield*, 829 N.E.2d 690, 694 (Ohio 2005). Thus, *Porterfield*, which was decided prior to *Foster*, relieved sentencing judges from making any judicial findings when the

prosecution and defense jointly recommend a sentence. And second, as long as the agreed-upon sentence is "authorized by law," it is shielded from appellate review. *See* Ohio Rev. Code § 2953.08(D) ("A sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge.").

Butler has failed to show that the Ohio Court of Appeals's decision was contrary to, or an unreasonable application of, clearly established federal law as articulated in *Blakely*. Butler entered into a plea agreement with the government recommending a jointly agreed-upon sentence of seventeen years and received exactly that sentence, which was within the statutory range. Thus, he was sentenced pursuant to the terms of his plea agreement and not upon any judicially found facts. We have uncovered no clearly established federal law suggesting that a trial judge's extraneous comments at a sentencing hearing amount to a *Blakely/Foster* violation under these circumstances. In fact, persuasive authority among federal district and Ohio appellate courts suggests the contrary. *See Kelley v. Brunsman*, 625 F. Supp. 2d 586, 604 (S.D. Ohio 2009) (adopting Magistrate Judge's statement that "[t]he trial judge's sentence arose directly from the plea agreement itself and not on any judicially-found facts. The trial court accepted the terms bargained for by the parties and, under these circumstances, the Court cannot say that petitioner's sentence violated the Sixth Amendment or *Blakely* . . . ."); *Carley v. Hudson*, 563 F. Supp. 2d 760, 778 (N.D. Ohio 2008) ("Although the trial judge made . . . findings, he was not required to do so under Ohio's sentencing laws and the validity of Carley's sentence was not dependent on those findings. Accordingly, the trial court's findings do

not change the conclusion that *Blakely* is inapplicable to Carley's sentence."); *see also Batista v. Warden, Lebanon Corr. Inst.*, No. 1:08-CV-00635, 2009 WL 3259289, at *10 & n.8 (S.D. Ohio Oct. 7, 2009) (adopted R&R) ("Ohio's appellate courts are in accord that the Supreme Court cases leading up to and resulting from *Blakely* are inapplicable to a stipulated sentence authorized by state law and imposed in accordance with the parties' plea agreement, which relieves the onus of fact-finding from the trial court.").[1]

Accordingly, the decision of the Ohio Court of Appeals, which pursuant to Ohio Revised Code § 2953.08(D) declined to review Butler's sentence for an alleged *Blakley/Foster* violation, was neither contrary to, nor an unreasonable application of, clearly established federal law.

**B.**

Butler also argues that his equal protection and due process rights were violated when the Ohio Court of Appeals invoked Ohio Revised Code § 2953.08(D) and refused to review the legality of his sentence. Under § 2953.08(D), a jointly recommended sentence that is imposed by the judge

---

[1]One court has departed from the otherwise consistent trend of courts rejecting *Blakley/Foster* claims similar to Butler's. *See Friley v. Wolfe*, No. 2:05-cv-396, 2006 WL 3420209, at *10 (S.D. Ohio Nov. 27, 2006) (holding, contrary to the precedent above, that entry into plea containing a jointly-recommended sentence did not preclude the petitioner from making a *Blakley* claim). *Friley* does support Butler's position. But tellingly, no other courts have relied upon *Friley* for the proposition Butler advances; in fact, courts have expressly disavowed *Friley*. *See, e.g.*, *Warren v. Warden, Noble Corr. Inst.*, No. 1:06cv534, 2008 WL 1732976, at *17 (S.D. Ohio Apr. 10, 2008) ("*Friley* appears to be contrary to the Ohio and federal case authority . . . ."). Moreover, *Friley* mistakenly relied in part upon our decision in *United States v. Amiker*, 414 F.3d 606, 607–08 (6th Cir. 2005), where the defendant did not, like Butler, stipulate to a sentence and receive exactly that same sentence. Thus, we too decline to follow *Friley*.

and "authorized by law" is largely shielded from appellate review.[2]  In considering Butler's

challenge, the Ohio Court of Appeals found that it did not have authority to review his sentence

because it comported with § 2953.08(D).

Butler argues that the Ohio Court of Appeals erred because his sentence could not have been

"authorized by law" because it violated *Blakely*.  But as explained in Part III.A., *supra*, his sentence

was based not on judicial fact-finding but on a jointly-recommended sentence that fell within the

statutory range.  Thus, because there was no violation of *Blakely*, Butler's sentence was "authorized

by law" under Ohio Revised Code § 2953.08(D).

Butler also contends that, even if his sentence was "authorized by law," the Ohio Court of

Appeals improperly declined to reach the merits of his due process claim.  Butler argues that "the

record is replete with representations that [he] was specifically told that he could appeal," and thus

he was "ignorant of the impact that his plea, and the imposition of the recommended sentence, would

have on his ability to appeal his sentence . . . ."  Essentially, Butler contends that even though  §

2953.08(D) strictly limited his right to appeal, he was led to believe otherwise—and his due process

rights were thereby violated.

As an initial matter, *Foster* left Ohio Revised Code § 2953.08(D) fully intact.  *Batista*, 2009

WL 3259289, at *9 n.7; *State v. Giesey*, No. 05-06-31, 2006 WL 3771982, at *1 (Ohio Ct. App. Dec.

---

[2]Ohio Revised Code § 2953.08(D) does not bar a defendant's challenge that his plea was not knowing or voluntary.  *See State v. Simmons*, No. C-050817, 2006 WL 3111415, at *2 (Ohio Ct. App. Nov. 3, 2006).  Indeed, Butler did argue briefly on direct appeal that his plea was not knowing, but the Ohio Court of Appeals rejected this argument.

26, 2006). Further, by passing § 2953.08(D), the Ohio "General Assembly intended a jointly

agreed-upon sentence to be protected from review precisely because the parties agreed that the

sentence is appropriate." *Porterfield*, 829 N.E.2d at 694. Thus, Butler is asking this court to

find—under the highly deferential standard that AEDPA demands—that a state court erred by

invoking a valid and frequently applied state law. By implication, he is also asking this court to

ignore the Ohio legislature's intent to shield these types of cases from appellate review. By any

measure, this is a tall order.

Butler makes a number of arguments in support of his claim. First, he argues that the trial

judge misinformed him that "[y]ou can appeal anything in this case that you want to" when in fact

he could not. But the trial judge made this comment during sentencing—two weeks *after* the plea

hearing in which Butler's plea became binding. Thus, the trial judge's words could not have affected

Butler's decision to plead guilty.

Next, Butler asserts that no one ever told him of the effect that Ohio Revised Code §

2953.08(D) would have on his right to appeal. Yet Butler cites no authority—let alone clearly

established federal law—for the proposition that a trial court has a positive duty to inform defendants

who stipulate to sentences how § 2953.08(D) will affect their appellate rights.[3] In fact, case law

suggests the opposite. *See Thompson v. Sheets*, No. 3:07CV2423, 2009 WL 2176050, at *1–3 (N.D.

Ohio July 21, 2009) (holding that "the trial court did not have a duty to inform Petitioner of any right

---

[3]Butler again cites *Friley* but, as discussed in Part III.A., *supra*, we do not adopt *Friley*'s approach, which numerous courts have disavowed.

to appeal his stipulated sentence" and therefore finding no due process violation); *Holcomb v. Wilson*, No. 3:05 CV 803, 2008 WL 2568303, at \*3 (N.D. Ohio June 24, 2008) (holding that, because petitioner entered into a stipulated sentence that precluded appellate review, a failure to inform petitioner about the appellate rights he believed he had was not error).

That leaves Butler's last argument. Although his plea agreement stated that "I understand my right to appeal a maximum sentence," Butler was sentenced to ten years (the maximum) on the manslaughter count but could not appeal that sentence because it was "authorized by law" under Ohio Revised Code § 2953.08(D). This language appears to be boilerplate for Ohio plea agreements during this time period, making Butler's case unremarkable. *See, e.g.*, *Snead v. Warden, Madison Corr. Inst.*, No. 1:11-cv-127, 2011 WL 6817872, at \*2 (S.D. Ohio Dec. 28, 2011) (R&R); *Kelley*, 625 F. Supp. 2d at 600. More importantly, a single sentence from Butler's plea agreement should not be stripped from the context of his case. During the plea hearing, the trial judge informed Butler of the many rights he was waiving by not going to trial and specifically ensured that Butler's plea was voluntary. Indeed, Butler does not contest the Ohio Court of Appeals's conclusion that his "plea was made knowingly and voluntarily" under Ohio law. Not once did Butler indicate—either at the plea hearing or the sentencing hearing—that his decision to plead guilty turned on his understanding of his appellate rights or that he was concerned about his appellate rights. *See, e.g.*, *State v. Winfield*, No. 2005-CA-32, 2006 WL 367124, at \*4 (Ohio Ct. App. Feb. 8, 2006) (rejecting claim that trial court improperly failed to advise defendant about the effect of § 2953.08(D) in part because defendant "did not premise his plea on any discussion about his appellate rights" and "did not

indicate that he wanted to appeal any particular issue"). Finally, it bears repeating that Butler knew the agreement proposed a seventeen-year sentence and that he received precisely that sentence.

Under these circumstances, we cannot conclude that the Ohio Court of Appeals's decision to invoke Ohio Revised Code § 2953.08(D) in the face of Butler's due process and equal protection challenges was contrary to, or an unreasonable application of, clearly established federal law.

**IV.**

For the foregoing reasons, we affirm the order of the district court.